403 S.E.2d 747

**Dana CROUCH, Appellant,**

v.

**WEST VIRGINIA WORKERS' COMPEN-SATION COMMISSIONER and Pfaff & Smith Builders & Supply Co., Appellee.**

**No. 19818.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 8, 1991.

Decided March 28, 1991.

---

Robert A. Taylor, Masters & Taylor, L.C., Charleston, for appellant.

BROTHERTON, Justice:

The petitioner, Dana Crouch, appeals from the August 15, 1990, ruling of the Workers' Compensation Appeal Board, which affirmed the Workers' Compensation Commissioner's order of March 17, 1989, denying authorization for the purchase of a van specially equipped to accommodate a wheelchair. The petitioner, who is paralyzed, intends to use the van for transportation. Mr. Crouch requested that the Commissioner authorize either the purchase of the van or, in the alternative, the difference between the cost of the van and the cost of Mr. Crouch's normal mode of transportation prior to the work-related injury.

On August 11, 1986, Dana Crouch was involved in an accident when the truck he was driving for Pfaff & Smith Builders & Supply Co. blew a tire and went over a hillside. Mr. Crouch fractured his neck and damaged his spinal cord. As a result,

Mr. Crouch is a quadriplegic and was declared totally and permanently disabled under the West Virginia workers' compensation statute.[1]

In July, 1987, the Crouches purchased a 1987 Ford Econoline van at the cost of $17,758.43. The van was converted for use with a wheelchair. In the fall of 1987, Mr. Crouch requested authorization for the purchase of the customized van, intended as reimbursement of the purchase price. On November 12, 1987, the Commissioner denied the request but authorized twenty-four-hour care for Mr. Crouch. The petitioner protested that ruling.

A hearing was held on December 16, 1988, at which time the petitioner submitted the April 8, 1988, report of Dr. Constantine Amores. Dr. Amores explained that Mr. Crouch was a quadriplegic as a result of a fracture dislocation of C5–6 and that he had developed atrophy and limited use of both upper extremities, although he had maintained normal cerebral function. Dr. Amores recommended that Mr. Crouch be provided a van. The petitioner also introduced the May 17, 1988, report of medical consultant, Joni Yeager, in which she recommended that a van be purchased for Mr. Crouch in order to provide readily available transportation. The Crouches then presented evidence of the vehicles used by Mr. Crouch before the accident, including, for example, a 1983 Ford truck which had been purchased for $7,800 in 1982. The Crouches argue that if they are not awarded the full cost of the van, they should be awarded the difference between the vehicle that they would be using but for the injury and the cost of the modified van.

On March 17, 1989, the Commissioner affirmed the November 12, 1987, order denying the purchase of a van and authorizing twenty-four-hour care for the petitioner. The petitioner appealed that portion of the ruling which denied authorization to purchase the van to the Workers' Compensation Appeal Board. By order dated August 15, 1990, the Appeal Board affirmed

1. West Virginia Code § 23–3–1 (1990).

the Commissioner's denial. The Board concluded that:

> While the claimant is, in fact, a quadriplegic, he can be transported to medical facilities, rehabilitation facilities, etc., by ordinary conveyances utilized by the general public with the assistance of his attendant authorized by the Commissioner. A specially equipped van is not necessary or warranted under the circumstances present in this claim....

This proceeding is Mr. Crouch's appeal from the final order of the Appeal Board.

The issue before this Court is whether a specially equipped van for a claimant is an authorized purchase pursuant to the provisions of W.Va.Code § 23–4–3 (1985). For the reasons stated below, we hold that the Fund is authorized to provide part of the purchase price of the specially equipped van and reverse the order of the Appeal Board.

■ As a general rule, the claimant's evidence in a workers' compensation case must be liberally construed in his favor. Moreover, this Court has stated that a claimant is entitled to all reasonable inferences that can be drawn from the evidence. *Javins v. Workers' Compensation Commissioner*, 173 W.Va. 747, 320 S.E.2d 119 (1984); *Sluss v. Workers' Compensation Commissioner*, 174 W.Va. 433, 327 S.E.2d 413 (1985).

West Virginia Code § 23–4–3 (1985) provides the parameters within which the Commissioner must operate in authorizing purchases related to compensable injuries. Specifically, the Code states, in part, that:

> The commissioner shall disburse and pay from the fund for such personal injuries to such employees as may be entitled thereto hereunder as follows:
> (a) Such sums for medicines, medical, surgical, dental and hospital treatment, crutches, artificial limbs and such other and additional *approved mechanical appliances and devices, as may be reasonably required.* (Emphasis added.)

■ Although we have discussed reimbursement of expenses related to a com-

pensable injury pursuant to W.Va.Code § 23–4–3,[2] the phrase "approved mechanical appliances" has not yet been interpreted by this Court. However, we have ruled that " '[t]hat which is necessarily implied in a statute, or must be included in it in order to make the terms actually used have effect, according to their nature and ordinary meaning, is as much a part of it as if it had been declared in express terms.' Syllabus point 14, *State v. Harden*, 62 W.Va. 313, 58 S.E. 715 (1907)." Syl. pt. 4, *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975). In this case, the fact that an automobile is not specifically named in W.Va.Code § 23–4–3(a) does not necessarily preclude its authorization. We believe that an automobile, which is a machine, can be interpreted as a "mechanical appliance" under the statute. Moreover, implicit in this statute is the fact that, for a quadriplegic, an automobile capable of transporting the petitioner and the accompanying equipment is more than "reasonably required" to be active in our society. Without adequate transportation, the existence of a claimant handicapped like the petitioner is limited at best.

Other states permit their industrial commissions to authorize the purchase of automobiles for the handicapped. The Florida Supreme Court has permitted the awarding of the cost of a specially equipped automobile necessary to accommodate a wheelchair or an artificial limb in order to "restore in part a claimant's former ambulatory ability...." *Fidelity and Casualty Co. v. Cooper*, 382 So.2d 1331, 1332 (Fla.App. 1 Dist.1980). The Florida statute requires that the employer/carrier provide "other apparatus" which "the nature of the injury ... may require.... § 440.13(1) Florida Statutes." *Id.* Further, in *Aino's Custom Slip Covers v. DeLucia*, 533 So.2d 862 (Fla. App. 1 Dist.1988), the Florida court held that the awarding of a van to a paraplegic or quadriplegic was proper if there was evidence introduced showing it was medically necessary within the statute.

Arizona's Industrial Commission approved the employer's insurance carrier's payment for a modified van following an industrial injury which rendered the employee a quadriplegic. *See Terry Grantham Co. v. Industrial Commission*, 154 Ariz. 180, 741 P.2d 313 (App.1987). The Arizona Revised Statute § 23–1062(A), like the West Virginia statute, provided the authorization for medical care, medical supplies, and "other apparatus." Based upon this statute, the Arizona court held that the modified van would fall within the interpretation of "apparatus."[3] *Id.* 154 Ariz. at 183, 741 P.2d at 316.

**2.** In *Ney v. Workers' Compensation Commissioner*, 171 W.Va. 13, 297 S.E.2d 212 (1982), this Court held that while the statute did not expressly authorize the reimbursement of expenses incurred by a claimant travelling to receive medical care, the expenses were necessarily incurred while *obtaining the required medical treatment*. Thus, the Court concluded that the statute would allow reimbursement for travel expenses even though the statute did not expressly authorize those expenses.

**3.** *But see McDonald v. Brunswick Electric Membership Corp.*, 77 N.C.App. 753, 336 S.E.2d 407 (1985), where the North Carolina court held that a claimant whose legs and one arm had been amputated in a work-related accident was not entitled, under their statute, to a specially modified van that would accommodate his motorized wheelchair. The North Carolina statute provided that "in cases of total and permanent disability, compensation, including reasonable and necessary nursing services, medicines, sick travel, medical, hospital or other treatment or care or rehabilitative services shall be paid for by the employer...." GS 97–29. *Id.* 336 S.E.2d at 408. Although North Carolina also operates under a liberality rule, the court ruled that requiring the employer to pay the cost of the van plus modification was not reasonable and necessary treatment, care, or rehabilitative services under the statute. That phrase, they reasoned, plainly referred to services or treatment rather than non-medical items. Thus, the court held the employer was not required to pay for the cost of the van itself, although the employer had agreed to reimburse the cost of modification.

*See also Nallan v. Motion Pictures Studio Mech. U.L. 52*, 49 A.D.2d 365, 375 N.Y.S.2d 164, 168 (N.Y.A.D. 3 Dept.1975) *rev'd on other grounds*, 40 N.Y.2d 1042, 391 N.Y.S.2d 853, 360 N.E.2d 353 (1976), in which the New York court held that a specially equipped car was not a "medical apparatus or device" under the statute; *Low Splint Coal v. Bolling*, 224 Va. 400, 297 S.E.2d 665 (1982), in which the Virginia court stated that their interpretation of the statutory phrase "other necessary medical attention" does

Pennsylvania has also held that modifications to a paraplegic's home and for hand controls to be installed in his automobile was covered under their workers' compensation statute. *See Rieger v. Workmen's Compensation Appeal Board (Barnes & Tucker Company)*, 104 Pa.Cmwlth. 42, 521 A.2d 84 (1987). Their Workers' Compensation Act, § 306, P.L. 736, as amended, 77 P.S. § 531(4) required that the employer pay for reasonable services, including "orthopedic appliances."

■ In this case, similar reasoning applies. We interpret the phrase in W.Va. Code § 23–4–3(a), "approved mechanical appliances ..., as reasonably required," to extend to a specially converted van for claimants who are quadriplegic as a result of a compensable injury. This is not to say, however, that the petitioner is awarded the full cost of the van. From the petitioner's own testimony, the petitioner and his family would have owned an automobile regardless of his injury. Therefore, the cost of an average, mid-price automobile, of the same year as the purchased van, must be deducted from the cost of the converted van. Accordingly, we reverse the order of the Workers' Compensation Appeal Board which affirmed the Commissioner's order denying authorization to purchase the van and remand the case to the Commissioner with directions to hold a hearing and take evidence on the issue of the value of the average automobile which is to be deducted from the cost of the customized van. Once the evidence has been taken, the Commissioner is directed to enter an order awarding the claimant the difference between the costs of the customized van and the average automobile.

Reversed and remanded, with directions.

not include structural renovations such as wheelchair ramps. Instead, the phrase is limited to services.